UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

C.P. MOTION, INC.,                                    Case No. 11-16072
                                                      Chapter 7

      Debtor.
_____/
BARRY E. MUKAMAL as
Chapter 7 Trustee,                                    Adv. Proc. No. _____

      Plaintiff,

v.

WEISBEIN & ASSOCIATES, INC (an
administratively dissolved Florida corporation)
and RAYMOND G. WEISBEIN AS TRUSTEE
OF WEISBEIN & ASSOCIATES, INC.,

      Defendant.
_____/

### ADVERSARY COMPLAINT (I) TO AVOID AND RECOVER FRAUDULENT TRANSFERS AND/OR (II) FOR UNJUST ENRICHMENT

      Plaintiff, Barry E. Mukamal, in his capacity as duly-appointed, qualified and permanent Chapter 7 Trustee ("**Trustee Mukamal**") for the bankruptcy estate of C.P. Motion, Inc. ("**Debtor**"), sues Weisbein & Associates, Inc (an administratively dissolved Florida corporation) and Raymond G. Weisbein as Trustee of Weisbein & Associates, Inc. ("**Defendant**").  In support of this Complaint, Trustee Mukamal alleges as follows:

      **I.**      **NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE**

      **A.**      **Nature of Action**

      1.      Trustee Mukamal sues Defendant: (i) to avoid and recover fraudulent transfers pursuant to sections 544, 548 and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et*

*seq*., ("**Bankruptcy Code**"), chapter 726 of the Florida Statutes ("**Fla. Stat.**") and Rule 7001 of

the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and (ii) for unjust enrichment

under Florida law.[1]

     **B.**     **Parties**

2.     Plaintiff, Trustee Mukamal, is the Chapter 7 Trustee of the Debtor's bankruptcy

estate.

3.     Defendant, **Weisbein & Associates, Inc (an administratively dissolved Florida**

**corporation) and Raymond G. Weisbein as Trustee of Weisbein & Associates, Inc.,** is a

profit, corporation, authorized to conduct business in the state of Florida.

     **C.**     **Jurisdiction**

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 157 (b) and 1334(b).

5.     This is a core proceeding for which the Court is authorized to determine all

matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A), (H) and (O).

     **D.**     **Venue**

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

     **II.**     **FACTUAL BACKGROUND**

---

[1]Trustee Mukamal reserves the right to bring additional claims against Defendant and nothing contained herein shall be deemed a waiver of any rights or causes of action that Trustee Mukamal or the Debtor's bankruptcy estate may have against Defendant.  Also, to the extent that Defendant has filed a proof of claim or has a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or has otherwise requested payment from the Debtor or the Debtor's Chapter 7 estate (collectively, the "Claims"), Trustee Mukamal reserves the right to object to such Claims for any reason including, but not limited to, 11 U.S.C. § 502(a) through (j), and this Complaint is not intended to be, nor should it be construed as a waiver of such right.  Additionally, during the course of this proceeding, Trustee Mukamal may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period, *i.e.* ninety (90) days prior to the Petition Date.  It is Trustee Mukamal's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee.  Trustee Mukamal reserves the right to amend this Complaint to include: (i) further information regarding the Transfer, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, and/or (iv) additional defendants that may become known to Trustee Mukamal at any time during this Adversary Proceeding, through formal discovery or otherwise, and for all such amendments to relate back to the date of filing of this original Complaint.

7.      On March 7th, 2011 ("**Petition Date**"), the Debtor filed a voluntary Chapter 7 petition, initiating the above styled bankruptcy case seeking to discharge over 8 million dollars of debt accumulated over the years.

8.      Debtor was incorporated in October 1999, in the State of Florida by Raymond Weisbein (Weisbein"), the Debtor's former President and owner -- who has testified previously that there were so many creditors who were suing the Debtor and were trying to attach the Debtor's checking accounts and other bank accounts, that, in order to avoid the Debtor's creditors, Weisbein opened two new Corporations in the names of Nova 1 ("Nova") and JSW Medical and Equipment Consulting LLC ("JSW") to move the income, balances and other assets of Debtor so as to avoid said creditors and their collection activities. Weisbein also testified that JSW and Nova continued to collect the Debtor's accounts receivables and used the Debtor's bank accounts.

9.      At all times material, although some of the accounts from which the sued-upon transfers were made to the Defendant were in the name of Nova and/or JSW, the reality is that these accounts were actually the Debtor's accounts and the transfers to Defendant from the accounts in the name of Nova and/or JSW were transfers of the Debtor's property.

10.     Nova was a subsidiary of the Debtor; and, both Nova and JSW were owned and controlled by Weisbein at all material times, and were otherwise insiders of the Debtor.

11.     Prior to the Petition Date, Defendant received transfers of money from the Debtor as identified on Exhibit "A" hereto, totaling approximately $66,557.50.

12.     The transfers were made to Defendant by check, wire transfer, cash, or electronic debit from accounts holding the monies of the Debtor.

13.     The Debtor's records do not indicate that the sued-upon transfers had a connection with or were related to the Debtor's business.

3

14.     The Debtor's records do not indicate that Defendant provided the Debtor with reasonably equivalent value in exchange for the sued-upon transfers.

15.     The Debtor's records do not indicate that Defendant provided the Debtor with any value in exchange for the transfers.

16.     The Debtor's records do not indicate that the Debtor was indebted to Defendant.

17.     The Debtor's principal, Weisbein is a sophisticated well-trained and hard-seasoned business man who had and continues to own and operate numerous health care related businesses, including, but not limited to, durable equipment suppliers, a pharmacy, and home rehabilitation businesses.

18.     Debtor's principal, Weisbein, has also previously owned and operated a bank that was seized by the Federal Deposit Insurance Corporation, a mortgage company, travel agencies, a property management company and numerous other businesses.

19.     Additionally, Debtor's principal, Weisbein, through a web of business entities has also owned, operated, and engaged in numerous real estate transactions.

20.     The Debtor's principal, Weisbein, and his wife, Selma Weisbein, have enjoyed (all at the expense and losses of the creditors of the Debtor) a lavish lifestyle replete with the trappings of multimillionaires, such as luxury waterfront properties in Cocoplum, Sanibel Island and the Florida Keys, and a swank vacation villa in Vail, Colorado, luxury vehicles, art work, jewelry, a small yacht and other trappings of wealth.

21.     For the years leading up to the bankruptcy filing, the Debtor amassed millions of dollars of debt while it was systematically pillaged and plundered by Weisbein, his wife and his children; and the assets of Debtor, other pillaged companies of Weisbein, and other assets of Weisbein, and his wife, were all eventually transferred to a self-settled trust, the Raymond G.

Weisbein And Selma S. Wesibein Irrevocable Trust (hereinafter, "RSWT"), with the intent to defraud the creditors of the Debtor and the creditors of Weisbein and his wife.

22.     This Debtor is yet another in a long line of business failures that have left creditors and unfortunate investors owed tens of millions of dollars in debt, while Weisbein and his family live a jet-set lifestyle.

23.     On March 30th, 2009, in a scheme to defraud creditors of the Debtor, the RSWT and Debtor filed a stipulated agreement of foreclosure and for entry of a final judgment in favor of the RSWT; and, on April 3rd, 2009, a final judgment of foreclosure on the assets of the Debtor was entered (**"Stipulated Judgment"**). As a result of the entry of the Stipulated Judgment, on May 11th, 2009, Debtor transferred all of its assets to the RSWT (the **"Disguised Transfer"**).

24.     The Stipulated Judgment and the scheme to defraud by the RSWT, Weisbein and his Wife, and their affiliates, friends, family and professionals (accountants and attorneys) were carried out in such precision and timing to ensure that the assets of the Debtor would be concealed, and transferred unnoticed by none of the creditors of the Debtor; and all of this occurred at a time when Debtor was not only not paying its debts as they generally came due, but also when in fact the Debtor was the subject of forbearance agreement(s) with J.P. Morgan Chase Bank (a creditor of the Debtor at the time), and also when lawsuits were commenced and/or threated against the Debtor for collection on debts and obligations.

25.     Additionally, Weisbein and his Wife purposefully caused, directly or indirectly, the Debtor's assets to be looted and transferred to others, including the instant Defendant, to hide the assets from the creditors of the Debtor, or the instant Trustee, and otherwise in an effort to avoid recovery and to obtain an advantage of paying down certain obligations which benefitted only Weisbein or his wife but not the Debtor herein.

26.     Therefore, prior to the Petition Date, Defendant received the sued upon transfers of Debtor's assets (see Exhibit "A" hereto).

27.     Other avoidable transfers also took place from the Debtor as to assets which could have been seized or executed upon by a judgment creditor of the Debtor at the time of each transfer as well, for which the Trustee seeks recovery in this suit as well, as discovery reflects same, due to the fact that Weisbein had concealed the nature of the transfers and the value of same.

28.     Any conditions precedent to bringing this action have been performed, have occurred or have been waived.

29.     The sued-upon transfers herein are just further evidence and examples of the continuing scheme to defraud Debtor's Creditors, as reflected above.

### COUNT I – AVOIDANCE OF TRANSFERS
### PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.
### §§ 726.105(1)(A) AND 726.108(1)(A)

30.     Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

31.     The Debtor made the Transfers in the amount set forth in the attached Exhibit "A" to Defendant within the four year period prior to the Petition Date.

32.     The Transfers were made with the actual intent to hinder, delay or defraud a creditor of the Debtor.

33.     The Debtor had at least one actual creditor as of the time of the Transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers are avoidable under applicable law, including Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a).

34.     The Transfers are avoidable pursuant to Bankruptcy Code § 544 and Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.     Declaring the Transfers to be fraudulent transfers pursuant to Fla. Stat. § 726.105(1)(a);

B.     Avoiding the Transfers as fraudulent transfers pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a);

C.     Awarding to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the value of the sued-upon transfers (money judgment) and pre- and post-judgment interest and costs; and

D.     Granting such other and further relief as may be equitable and just.

### COUNT II – AVOIDANCE OF TRANSFERS
### PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.
### §§ 726.105(1)(B) AND 726.108(1)(A)

35.     Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

36.     The Debtor made the Four Year Transfers in the amount indicated on Exhibit "A" within said four year period to Defendant prior to the Petition Date.

37.     The Debtor received less than reasonably equivalent value in exchange for the Transfers; and

a.     The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to its business or transaction; or

7

b.       The Debtor intended to incur, or believed it would incur, debts that would be beyond the Debtor's ability to pay as they became due.

38.       The Debtor had at least one actual creditor as of the time of the Transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a).

39.       The Transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.       Declaring the Transfers to be fraudulent transfers pursuant to Fla. Stat. § 726.105(1)(b);

B.       Avoiding the Transfers as fraudulent transfers pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a);

C.       Awarding to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the value of the sued-upon transfers (money judgment) and pre- and post-judgment interest and costs; and

D.       Granting such other and further relief as may be equitable and just.


**COUNT III – AVOIDANCE OF TRANSFERS
PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.
§§ 726.106(1) AND 726.108(1)(A)**


40.       Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

41.     The Debtor made the Transfers in the amount identified on Exhibit "A" to Defendant within the four year period prior to the Petition Date.

42.     The Debtor made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

43.     The Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers.

44.     The Debtor had at least one actual creditor as of the time of the Transfers holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

45.     The Transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.     Declaring the Transfers to be fraudulent transfers pursuant to Fla. Stat. § 726.106(1);

B.     Avoiding the Transfers as fraudulent transfers pursuant to Bankruptcy Fla. Stat. § 726.106(1) and 726.108(1)(a);

C.     Requiring the payment of the Transfers to Trustee Mukamal, the value of the sued-upon transfers (money judgment) and pre- and post-judgment interest and costs; and

D.     Granting such other and further relief as may be just and proper.

## COUNT IV – AVOIDANCE OF TRANSFERS
## PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND FLA. STAT.
## §§ 726.106(2) AND 726.108(1)(A)

46. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

47. The Debtor made the Transfers in the amount identified on Exhibit "A" to Defendant within the four year period prior to the Petition Date.

48. At the time of the Transfers made by the Debtor, creditors of the Debtor had claims which arose before the Transfers were made, and the Transfers were made to an insider for an antecedent debt, the Debtor was insolvent at that time, and the insider had reasonable cause to believe that the Debtor was insolvent.

49. The Transfers are avoidable under Bankruptcy Code § 544 and Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.     Declaring the Transfers to be fraudulent transfers pursuant to Fla. Stat. § 726.106(2);

B.     Avoiding the Transfers as fraudulent transfers pursuant to Bankruptcy Fla. Stat. § 726.106(2) and 726.108(1)(a);

C.     Requiring the payment of the Transfers to Trustee Mukamal, the value of the sued-upon transfers (money judgment) and pre- and post-judgment interest and costs; and

D.     Granting such other and further relief as may be just and proper.

## COUNT V — AVOIDANCE OF TRANSFERS
## PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND  § 548(a)(1)(A)

50. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

10

51. The Debtor made the Transfers from March 7th, 2009 thru March 7th, 2011 to Defendant as identified in the attached Exhibit "A" within two years prior to the Petition Date.

52. The above-referenced transfers were transfers of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within two years before the date of the filing of the bankruptcy petition.

53. These transfers were made by the Debtor with the actual intent to   hinder, delay or defraud any entity to which the Debtor was or became indebted, on or after the date that such transfers were made.  For example, the Debtor was paying for personal expenses of the principal to ensure satisfaction of personal debts and ignoring Creditors of the Debtor; as well as utilizing the assets of Debtor to pay for Non-Debtor obligation for which Debtor received no consideration.

54. The Debtor made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

55. The Transfers are avoidable under Bankruptcy Code § 544 and § 548(a)(1)(A).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.      Declaring the Transfers to be fraudulent transfers pursuant to § 548(a)(1)(A);

B.      Avoiding the Transfers as fraudulent transfers pursuant to § 548(a)(1)(A);

C.      Requiring the payment of the Transfers to Trustee Mukamal, the value of the sued-upon transfers (money judgment) and pre- and post-judgment interest and costs; and

D.      Granting such other and further relief as may be just and proper.

11

## COUNT VI — AVOIDANCE OF TRANSFERS
## PURSUANT TO BANKRUPTCY CODE § 544(B)(1) AND  § 548(a)(1)(B)

56. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

57. The Debtor made the Transfers from March 7th, 2009 thru March 7th, 2011 to Defendant as indentified in the attached Exhibit "A" within the two years prior to the Petition Date.

58. The above-referenced transfers were transfers of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within two years before the date of the filing of the bankruptcy petition.

59. The Debtor received less than reasonably equivalent value in exchange for the transfers above-referenced; and,

    a. was insolvent on the dates of each transfer, or became   insolvent as a result of such transfers;

    b. was engaged in business or a transaction, or was about to engage in business in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or,

    c. intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay such debts as they matured.

60. The Transfers are avoidable under Bankruptcy Code § 544 and § 548(a)(1)(B).

**WHEREFORE**, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

    A.    Declaring the Transfers to be fraudulent transfers pursuant to § 548(a)(1)(B);

    B.    Avoiding the Transfers as fraudulent transfers pursuant to § 548(a)(1)(B);

C.      Requiring the payment of the Transfers to Trustee Mukamal, the value of the sued-upon transfers (money judgment) and plus pre- and post-judgment interest and costs; and

D.      Granting such other and further relief as may be just and proper.


## COUNT VII — RECOVERY OF THE
## TRANSFERS PURSUANT TO BANKRUPTCY CODE § 550

61. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

62. The Transfers are avoidable pursuant to Bankruptcy Code §§ 544(b)(1), 548(a)(1)(A) and (B) and Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b) and/or 726.106(1) and § 726.108(1)(a).

63. With respect to the Transfers, Defendant was either the initial transferee or entity for whose benefit the Transfers were made under Bankruptcy Code § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of Bankruptcy Code § 550(a)(2).

64. To the extent that Defendant was or is found to be an immediate or mediate transferee within the meaning of Bankruptcy Code § 550(a)(2), Defendant was not a transferee who took for value, in good faith, without knowledge of the voidability of the Transfers, within the meaning of 11 U.S.C. § 550(b)(1); or an immediate or mediate good faith transferee thereof within the meaning of 11 U.S.C. § 550(b)(2).

65. The Transfers are, or the value of the Transfers is, recoverable from Defendant by Trustee Mukamal pursuant to Bankruptcy Code § 550.

WHEREFORE, Trustee Mukamal respectfully requests the Court enter a Judgment against Defendant:

A.      Declaring Defendant to be either an initial transferee of the Transfers or entity for whose benefit the Transfers were made under Bankruptcy Code § 550(a)(1); or, alternatively, an

13

immediate or mediate transferee of the Transfers within the meaning of Bankruptcy Code § 550(a)(2);

B.      Directing Defendant to turn over to Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, the Transfers or the value of the Transfers or awarding Trustee Mukamal, for the benefit of the Debtor's bankruptcy estate, money damages against Defendant in the amount of the Transfers, plus pre- and post-judgment interest and costs; and

C.      Granting such other and further relief as may be equitable and just.

## COUNT VIII — UNJUST ENRICHMENT
## AGAINST DEFENDANT RELATING TO THE TRANSFERS

66. Trustee Mukamal realleges the allegations set forth in paragraphs 1 through 29.

67. The Debtor made the Transfers in the amount set forth on Exhibit "A" to Defendant.

68. The Debtor conferred a benefit on Defendant by virtue of the Transfers.

69. Defendant voluntarily accepted and retained the benefit conferred, which were the Transfers.

70. The circumstances render Defendant's retention of the Transfers, which was the benefit conferred on it by the Debtor, inequitable unless Defendant pays the Debtor the value of the Transfers.

71. Defendant was unjustly enriched by virtue of the Transfers.

**WHEREFORE**, Trustee Mukamal respectfully requests the Court to enter a Judgment:

A.      Granting money damages to Trustee Mukamal against Defendant in the amount of the Transfers, for the benefit of the Debtor's bankruptcy estate, plus pre- and post-judgment interest, and reasonable attorneys' fees and expenses, to the extent permissible by applicable law, to Trustee; and

B.      Granting such other and further relief as may be equitable and just.


Dated: March 7th, 2013.

                          Respectfully submitted,

                          Law Offices of James B. Miller, P.A.
                          19 West Flagler Street, Suite 416
                          Miami, FL 33130
                          Tel. No. (305) 374-0200
                          Fax. No. (305) 374-0250
                          Email: jbm@title11law.com


                          _____/s/_____
                          JAMES B. MILLER, ESQ.
                          Fla. Bar No. 0009164

                          *Special Counsel for Trustee Mukamal*